LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| BAIRON ORELLANA, MYNOR ESCALANTE, and NELSON LOPEZ, *on behalf of themselves, FLSA Collective Plaintiffs and the Class,* | Case No.: |
| Plaintiffs, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| PIO PIO NYC, INC., SIPAN RESTAURANT OF NEW YORK, INC. PIO PIO OCHO, INC., PIO PIO 34, INC., PIO PIO 85, INC., PIO PIO EXPRESS, INC., MOCHICA GROUP CORP., POLLOS A LA BRASA PIO, PIO, INC., PIO-PIO RESTAURANT, INC., PIO PIO BROOKLYN INC., EL PILLO INC., INES YALLICO, and AUGUSTO YALLICO, | |
| Defendants. | |

---

Plaintiffs, BAIRON ORELLANA, MYNOR ESCALANTE, and NELSON LOPEZ, ("Plaintiffs"), on behalf of themselves, FLSA Collective Plaintiffs and the Class, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against

1

Defendants, PIO PIO NYC, INC., SIPAN RESTAURANT OF NEW YORK, INC., PIO PIO OCHO, INC., PIO PIO 34, INC., PIO PIO 85, INC., PIO PIO EXPRESS, INC., MOCHICA GROUP CORP., POLLOS A LA BRASA PIO, PIO, INC., PIO-PIO RESTAURANT, INC., PIO PIO BROOKLYN INC., EL PILLO INC., (together, the "Corporate Defendants"), INES YALLICO and AUGUSTO YALLICO (together, the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants") and state as follows:

## INTRODUCTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) unpaid wages for off-the-clock work caused by time-shaving, (4) illegally retained gratuities, (5) liquidated damages, and (6) attorneys' fees and costs.

2.    Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) unpaid wages for off-the-clock work caused by time-shaving, (4) illegally retained gratuities, (5) unpaid spread of hours, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.    Plaintiff, BAIRON ORELLANA, is a resident of Queens County, New York.

7. Plaintiff, JUAN RAMIREZ, is a resident of New York County, New York.

8. Plaintiff, MYNOR ESCALANTE is a resident of New York County, New York.

9. Plaintiff, NELSON LOPEZ, is a resident of New York County, New York.

10. Defendants operate a chain of nine Peruvian Restaurants and a bar as a single integrated enterprise. All nine restaurants share the trade name "Pio Pio". The Pio Pio restaurants and bar are located at the following addresses:

   a. 62-30 Woodhaven Boulevard, Rego Park, NY 11379 (the "Rego Park Location");

   b. 84-02 Northern Boulevard, Jackson Heights, NY 11372 (the "Jackson Heights Location");

   c. 84-21 Northern Boulevard, Jackson Heights, NY 11372 (the "Jackson Heights To-Go Location");

   d. 264 Cypress Ave., Bronx, NY 10454 (the "Bronx Location");

   e. 604 Tenth Ave., New York, NY 10036 (the "Hell's Kitchen Location");

   f. 210 E. 34th St., New York, NY 10016 (the "Murray Hill Location");

   g. 702 Amsterdam Ave., New York, NY 10025 (the "Upper West Side Location");

   h. 1746 First Ave., New York, NY 10128 (the "Upper East Side Location");

   i. 282 Kings Hwy, Brooklyn, NY 11223 (the "Brooklyn Location");

(collectively, "Pio Pio Restaurants"), and

   j. 4813 Northern Blvd, Jackson Heights, NY 11372 (the Amaru Bar).

11. Corporate Defendants:

a.      PIO PIO NYC INC. is a domestic business corporation organized under the laws of the State of New York, with a principal executive office and an address for service of process located at 84-15 Northern Boulevard, Jackson Heights, NY 11372. PIO PIO NYC, INC. owns and operates the Bronx Location, located at 264 Cypress Ave., Bronx, NY 10454. AUGUSTO YALLICO is Chairman or Chief Executive Officer of PIO PIO NYC, INC.

b.      SIPAN RESTAURANT OF NEW YORK, INC. is a domestic business corporation organized under the laws of the State of New York, with a principal executive office and an address for service of process located at 32-68 85th St., East Elmhurst, New York 11378. SIPAN RESTAURANT OF NEW YORK, INC. owns and operates the Upper West Side Location, located at 702 Amsterdam Ave., New York, NY. AUGUSTO YALLICO is Chairman or Chief Executive Officer of SIPAN RESTAURANT OF NEW YORK, INC.

c.      PIO PIO OCHO, INC. is a domestic business corporation organized under the laws of the State of New York, with an address for service of process located at c/o Thomas T. Hecht, P.C., 1270 Avenue of the Americas, Second Floor, New York, NY 10020. PIO PIO OCHO, INC. owns and operates the Hell's Kitchen Location, located at 604 10th Ave., New York, NY 10036.

d.      PIO PIO 34, INC., is a domestic business corporation organized under the laws of the State of New York, with a principal executive office located at 32-68 85th St., East Elmhurst, New York 11370, and an address for service of process located at c/o Mochica Group, 32-68 85th St, East Elmhurst, NY 11370. PIO PIO 34, INC. owns and operates the Murray Hill Location, located at 210 E. 34th St., New York, NY 10016. AUGUSTO YALLICO is the Chief Executive Officer of PIO PIO 34, INC.

e.     PIO PIO 85, INC., is a domestic business corporation organized under the laws of the State of New York, with a principal executive office and an address for service of process located at 84-15 Northern Boulevard, Jackson Heights, NY 11372. PIO PIO 85, INC. owns and operates the Jackson Heights To Go Location, located at 84-21 Northern Boulevard, Jackson Heights, NY 11372.  AUGUSTO YALLICO is the Chief Executive Officer of PIO PIO 85, INC.

f.     PIO PIO EXPRESS, INC. is a domestic business corporation organized under the laws of the State of New York, with a principal executive office and address for service of process located at 1746 First Ave., New York, NY 10128. PIO PIO EXPRESS, INC. owns and operates the Upper East Side Location, located at 1746 First Ave., New York, NY 10128. AUGUSTO YALLICO is the Chief Executive Officer of PIO PIO EXPRESS, INC.

g.     POLLOS A LA BRASA PIO, PIO, INC., is a domestic business corporation organized under the laws of the State of New York, with a principal executive office and an address for service of process located at 82-30 Woodhaven Boulevard, Rego Park, NY 11374. POLLOS A LA BRASA PIO, PIO, INC. operates the Rego Park Location, located at 62-30 Woodhaven Boulevard, Rego Park, NY 11374. AUGUSTO YALLICO is the Chief Executive Officer of POLLOS A LA BRASA PIO, PIO, INC.

h.     PIO-PIO RESTAURANT, INC. is a domestic business corporation organized under the laws of the State of New York, with a principal executive office and address for service of process located at 84-15 Northern Boulevard, Jackson Heights, NY 11372. It operates the Jackson Heights Location, located at 84-02 Northern Boulevard, Jackson Heights, NY 11372. AUGUSTO YALLICO is the Chief Executive Officer of PIO-PIO RESTAURANT, INC.

i.     PIO PIO BROOKLYN, INC. is a domestic business corporation organized under the laws of the State of New York, with an address for service of process located at Thomas T.

Hecht, P.C., 1270 Avenue of the Americas, Second Floor, New York, New York 10020. PIO PIO BROOKLYN, INC. owns and operates the Brooklyn Location located at 282. Hwy, Brooklyn, NY 11223    AUGUSTO YALLICO is the Chief Executive Officer of PIO-PIO RESTAURANT, INC.

     j.     EL PILLO INC. is a domestic business corporation organized under the laws of the State of New York, with a principle executive office at 8415 Northern Blvd, 2nd Fl., Jackson Heights, New York, 11372 and an address for service of process located at 8413 Northern Blvd, Jackson Heights, New York, 11372. EL PILLO INC. owns and operates the bar Amaru located at 8413 Northern Blvd, Jackson Heights, New York, 11372. AUGUSTO YALLICO is the Chief Executive Officer of EL PILLO, INC.

     k.     MOCHICA GROUP CORP. is a domestic business corporation organized under the laws of the State of New York, with an address for service of process located at c/o Spiegel & Utrera, P.A., P.C., 45 John Street, Suite 711, New York, NY 10038. MOCHICA GROUP CORP. owns and operates the Pio Pio Restaurants through its 100% ownership of each of the other Corporate Defendants, each of which owns and operates individual Pio Pio Restaurants directly.

     12.     Individual Defendant AUGUSTO YALLICO is the Chairman or Chief Executive Officer of all Corporate Defendants. AUGUSTO YALLICO hired the Plaintiffs directly and operates and supervises the Pio Pio Restaurants and the bar Amaru daily.

     13.     Individual Defendant INES YALLICO is a principal and controlling member of all Corporate Defendants. At all relevant times, she has been the General Manager of the Pio Pio Restaurants and the bar Amaru.

14.     Each of the Individual Defendants had the power and exercised the authority to (i) fire and hire all employees of Pio Pio Restaurants, (ii) determine their rate and method of pay, (iii) determine their work schedules, (iv) maintain employees' employment records and (v) otherwise affect the quality of employment of Plaintiffs, the FLSA Collective Plaintiffs and the Class members.  The Individual Defendants exercised functional control over the business and financial operations of the Corporate Defendants, including ensuring that employees properly prepared food and served customers to ensure that the Pio Pio restaurants were operating efficiently and profitably.  At all times, employees could complain to either of the Individual Defendants directly regarding any of the terms of their employment, and the Individual Defendants would have the authority to effect any changes to the quality and terms the employment.

15.     The Defendants operate all nine Pio Pio restaurants and the bar Amaru as a single integrated enterprise. Specifically, the restaurants and bar are engaged in related activities, share common ownership and have a common business purpose:

a.   Related Activities

   i.   The Pio Pio Restaurants and bar Amaru interchange supplies and employees are shifted among the restaurants and bar. Employees are also allowed to cover shifts at different locations. For example, Plaintiff Bairon Orellano concurrently worked at the Upper Westside Location and Amaru. He also covered shifts at the Bronx Location and Jackson Heights To Go Location.

   ii.   The Pio Pio Restaurants and the bar Amaru are operated from a single central office located at 8421 Northern Blvd., Jackson Heights, NY 11372.

The central office is the operational headquarters of Corporate Defendant MOCHICA GROUP CORP. All employee and payroll records were managed and retained at the central office. Additionally, bookkeeping, human resources, and marketing personnel worked from the central office to manage all Pio Pio restaurants and the bar Amaru.

   iii. The Pio Pio restaurants are all advertised jointly as a common enterprise on Defendants' website, htttp://www.piopio.com.

  b. Common Ownership

    i. Individual Defendants, INES YALLICO and AUGUSTO YALLICO are officers in charge of daily operations of each of the Pio Pio restaurants and the bar Amaru. They set all wage and hour policies, which are effected by managers at each Pio Pio restaurant.

    ii. At all times, INES YALLICO and AUGUSTO YALLICO control each of the managers at each of the Pio Pio restaurants and the bar Amaru.

    iii. At all times, INES YALLICO and AUGUSTO YALLICO have a direct or indirect controlling interest in each of the Pio Pio restaurants and the bar Amaru.

  c. Common Business Purpose

    i. The Pio Pio restaurants and the bar Amaru all share similar menu items and specialize in serving Peruvian cuisine and drinks.

Although the Plaintiffs did not work at all the Pio Pio restaurants, all of the restaurants are appropriately named in this Complaint through the relevant Corporate Defendants described above.   Because all of the restaurants share identical illegal wage and hour policies, the

restaurants (and the relevant Corporate Defendants) are properly named because of outstanding liability to the FLSA Collective Plaintiffs and Class members for whom Plaintiffs seek to represent.

16.     At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.  At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

17.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons, including cooks, line-cooks, dishwashers, food preparers, porters, runners, bussers, waiters, barbacks, delivery persons, and bartenders employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

18.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them (i) minimum wages, (ii) overtime, and (iii) wages for off-the-clock work. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. Plaintiffs  and a subgroup of FLSA Collective Plaintiffs who were tipped employees, (the "Tipped Subclass"), including  runners, bussers, waiters, barbacks, delivery persons, and bartenders, claim that Defendants willfully violated their rights by failing to pay minimum wages in the lawful amount for hours worked and illegally retaining their tips.  Defendants were not entitled to take any tip credits under the FLSA, because they failed to meet statutory

requirements under the FLSA.

19.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

20.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons, including cooks, line-cooks, dishwashers, food preparers, porters, runners, bussers, waiters, barbacks, delivery persons, and bartenders, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

21.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

22.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number

are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

23.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay minimum wages, (ii) failing to pay for off the clock work, (iii) failing to pay overtime compensation, (iv) failing to pay spread of hours premium, (v) failing to provide wage statements to Class members as required under the New York Labor Law, and (vi) failing to provide proper wage and hour notice to Class members, at date of hiring and annually thereafter, per requirements of the New York Labor Law. In addition, a subclass of Class members who were tipped employees including runners, bussers, waiters, barbacks, delivery persons, and bartenders (the "Tipped Subclass") suffered from Defendants' failure to pay minimum wage (based on Defendants' invalid tip credit) and illegal retention of tips.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

25.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation

where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide

class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a)  Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

    b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

    c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

    d)  Whether Defendants properly notified Plaintiffs and the Class members of their hourly rate and overtime rate;

    e)  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

    f)  Whether Defendants took proper amount of tip credit allowance under the New York Labor Law;

    g)  Whether Defendants provided proper wage statements informing (i) Plaintiffs and Class members who were tipped employees of the amount of tip credit taken for each payment period and their proper overtime rate of compensation and (ii) Plaintiffs and Class members information required to be provided on wage statements as required under the New York Labor Law;

h)   Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to Plaintiffs and Class members per requirements of the New York Labor Law;

i)   Whether Defendants caused tipped employees to engage in non-tipped duties exceeding two hours per day or 20% of each workday;

j)   Whether Defendants illegally retained gratuities earned by Plaintiffs and Class member who were tipped employees;

k)   Whether Defendants kept daily records of tips earned by Plaintiffs and Class members who were tipped employees;

l)   Whether Defendants paid Plaintiffs and Class members the federal and state minimum wage for all hours worked;

m)  Whether Defendants properly compensated Plaintiffs and Class members for overtime under state and federal law;

n)   Whether Defendants paid Plaintiffs and the Class members the New York State "spread of hours" premium when their workdays exceeded ten hours;

o)   Whether Defendants failed to properly compensate Plaintiffs and Class members for all their hours worked due to time shaving; and

p)   Whether Defendants improperly paid Plaintiffs and Class members on a fixed salary basis, when New York State law requires that all non-exempt employees be paid on an hourly basis.

## STATEMENT OF FACTS

28.   Plaintiff BAIRON ORELLANA:

14

a. In or around 2010, Plaintiff ORELLANA was hired by Defendants to work as a busboy at the Jackson Heights location formerly located at 8413 Northern Blvd., Queens, New York 11372 (currently located at 84-02 Northern Blvd., Queens, New York 11372). From in or about October 2013, Plaintiff worked as a runner and waiter at Defendants' Upper West Side Location, located at 702 Amsterdam Ave., New York, NY 10025. Concurrently, Plaintiff worked as a barback for Defendants at Defendants' bar Amaru located at 8413 Northern Blvd., Queens, New York 11372. Plaintiff also covered shifts at Defendants' Bronx Location, located at 264 Cypress Ave., Bronx, NY 10454 and at the Jackson Heights To-Go Location, located at 84-21 Northern Boulevard, Jackson Heights, NY 11372. Plaintiff's employment with Defendants was terminated in or around September 2014.

b. Throughout his employment, Plaintiff ORELLANA regularly worked over 40 hours per week. From in or about 2010 to October 2013, Plaintiff ORELLANA worked from 10:00 a.m. to 2:00 a.m., Fridays to Sundays, and 4:00 p.m. to 1:00 a.m., Tuesdays and Thursdays, at the Jackson Heights Location for a total of 57 hours per week.

c. From in or about October 2013 to September 2014, Plaintiff ORELLANA worked 10:00 a.m. to 11:30 p.m., Mondays to Wednesdays, and 10:00 a.m. to 4:30 p.m. on Thursdays, at the Upper West Side Location for a total of 47 hours per work week. Plaintiff ORELLANA also worked 6:00 p.m. to 5:00 a.m. at the bar Amaru on Fridays and Saturdays for an additional 22 hours per work week.

d. Throughout his employment, Defendants paid Plaintiff ORELLANA straight time at the rate of $5.00 per hour despite regularly working over 40 hours per work week. Additionally, Individual Defendant AUGUSTO YALLICO would retain all the tips on larger dining checks, further diminishing Plaintiff's compensation. During Plaintiff ORELLANA's employment,

Defendants began scheduling employees for less than 40 hours per work week but still required them to work their same hours that regularly exceeded 40 hours. Defendants purposefully under-reported the amount of time they actually worked so that no overtime hours were recorded or paid. Defendants relayed to their employees that employees could work outside their scheduled days but only for tips. Specifically, Defendants scheduled Plaintiff ORELLANA to work 3 days per week for 8 hours per day. Plaintiff was clocked in and out at his scheduled hours but actually worked an additional two or three days for 9.5 hours each additional day. These additional hours were "off the books" and he was only compensated with the tips he earned on those days.

29.     Plaintiff MYNOR ESCALANTE:

a.      On or about January 3, 2010, Plaintiff ESCALANTE was hired by Defendants to work as a delivery person at Defendants' Upper East Side Location, located at 1746 First Ave., New York, NY 10128. For a four month period, Defendants required Plaintiff to perform the duties of a dishwasher on Saturdays and a salad preparer on Mondays. Plaintiff's employment with Defendants was terminated in or about June 2013.

b.      Throughout his employment, Plaintiff ESCALANTE worked from 10:30 a.m. to 9:00 p.m. Wednesday to Sunday with a one hour lunch break for a total of 47.5 hours per work week. Plaintiff ESCALANTE would arrive and start working by preparing salads from 10:30 a.m. required Plaintiff ESCALANTE to clock-in at 11:00 a.m. and clock-out at 8:00 p.m., shaving 7.5 hours per work week from his compensation.   Additionally, during Plaintiff ESCALANTE's employment, Defendants began scheduling employees for less hours but still required them to work their same hours that regularly exceeded 40 hours. Defendants purposefully under-reported the amount of time he actually worked so that no overtime hours

were recorded or paid. Defendants relayed to their employees that employees could work outside their scheduled days but only for tips.

      c.      Throughout his employment, Plaintiff ESCALANTE was compensated at the hourly rate of $7.25. During Plaintiff ESCALANTE's employment, Defendants never compensated him for all hours actually worked or overtime hours because Defendants purposefully under-reported the amount of time he actually worked so that no overtime hours were recorded or paid.

      30.  Plaintiff NELSON LOPEZ:

      a.      In or about July 2011, Plaintiff LOPEZ was hired by Defendants to work for a month as a delivery person and food preparer at Defendants' Upper East Side Location, located at 1746 First Ave., New York, NY 10128. In or about November 2011, Plaintiff was rehired by Defendants to work as a delivery person and food preparer at Defendants' Murray Hill Location, located at 210 E. 34th St., New York, NY 10016. Plaintiff's employment with Defendants was terminated in or around February 2015.

      b.      From in or about November 2013 to May 2014, Plaintiff LOPEZ worked from 10:00 a.m. to 11:00 p.m. five days per week, and 4:00 p.m. to 11:00 p.m. one day per week, for a total of 72 hours per work week. During Plaintiff LOPEZ's employment, Defendants began scheduling employees for less hours but still required them to work their same hours that regularly exceeded 40 hours. Defendants purposefully under-reported the amount of time he actually worked. Defendants relayed to their employees that employees could work outside their scheduled days but only for tips. Specifically, Defendants would have Plaintiff LOPEZ clock in and out for his scheduled hours on the days he worked from 10:00 a.m. to 11:00 p.m. but he was not allowed to clock in for his hours on the day he worked from 4:00 p.m. to 11:00 p.m., shaving

7 hours per work week from his compensation. Plaintiff LOPEZ was not compensated for his hours from 4:00 p.m. to 11:00 p.m. and was only allowed to retain the tips from those days. From in or about May 2014, Plaintiff's schedule changed from 10:00 a.m. to 11:00 p.m., four days per week, for a total of 52 hours per week.

     c.   From in or about July 2011 to August 2011 and November 2011 to January 2012, Plaintiff LOPEZ was compensated on a fixed salary basis of $500 paid biweekly in cash. From in or about January 2012 to April 2014, Plaintiff LOPEZ was compensated at the rate of $7.25 per hour by check for approximately 32 hours per week despite regularly working 72 hours per week. Defendants purposefully under-reported the amount of time Plaintiff actually worked so that no overtime hours were recorded or paid. From in or about April 2014, Plaintiff LOPEZ was compensated at the rate of $8.00 per hour. From in or about May 2014 to January 2015, Plaintiff was compensated at $8.00 per hour for his hours worked as a delivery person and $10.75 per hour for his hours as a food preparer. From in or about January 2015 to February 2015, Plaintiff was compensated at $8.75 per hour for his hours worked as a delivery person and remained at $10.75 per hour for his hours worked as a food preparer. Defendants failed to compensate Plaintiff LOPEZ at the overtime rate based on the weighted average of his two rates. 29 C.F.R. §778.110.

    31.   Defendants violated the rights of Plaintiffs and Tipped Subclass Members by paying them below the required minimum wage. Defendants were not entitled to take tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a

valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless them have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the FLSA, (vi) illegally retained gratuities, (vii) failed to accurately track daily tips earned or maintain records thereof, (viii) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (ix) failed to provide a proper wage statement with every payment of wages informing Plaintiffs and other tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

32.     At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were not paid overtime premium for hours worked more than 40 hours per week. Defendants knowingly and willfully failed to pay Plaintiff, FLSA Collective, and Class members the proper overtime premium rate of time and one half of regular hourly rate for each hour exceeding forty (40) hours per workweek.

33.     At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were not paid for all hours worked due to Defendants policy of time shaving. Defendants knowingly and willfully failed to pay Plaintiff, FLSA Collective, and Class members the proper minimum wage and overtime premium for all actual hours worked.

34.     At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members regularly worked over 10 hours per day. Defendants knowingly and willfully failed to pay Plaintiff, the FLSA Collective Plaintiffs, and members of the Class the New York State "spread of hours" premium.

35.     Defendants failed to provide proper wage and hour notices, at the date of hiring and annually thereafter, to all their employees in violation of the requirements of the New York Labor Law.

36. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to all their employees as required under the New York Labor Law.  Defendants failed to reflect the actual number of hours worked and also failed to provide Tipped Subclass Members with proper pay stubs reflecting the tip-credit claimed by for each pay period.

37.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

38.     Plaintiffs reallege and reaver Paragraphs 1 through 37 of this class and collective action Complaint as if fully set forth herein. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

39.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

40.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

41.     At all times, Plaintiffs and FLSA Collective Plaintiffs were non-exempt employees within the meaning of the FLSA and not subject to any statutory exemption from the requirements of overtime or minimum wages.

42.     At all times, Defendants had a time shaving policy of not compensating Plaintiffs and FLSA Collective Plaintiffs for every hour they worked.

43.     At all relevant times, the Defendants failed to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty hours per workweek due to time shaving.

44.     At all relevant times, the Defendants failed to pay the statutory minimum wage to Plaintiffs and FLSA Collective Plaintiffs who were tipped employees for their hours worked.

45.     Defendants willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights by failing to pay them minimum wages in the lawful amount for hours worked.  Defendants were not entitled to take any tip credits under the FLSA, because they failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, rendering the tip credit invalid in respect of all tipped employees.

46.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

47.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their intentional failure to compensate Plaintiffs and FLSA Collective Plaintiffs for every hour they worked, including regular hours and overtime hours.

48.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

49.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

50.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime wages, illegally retained gratuities, plus an equal amount as to liquidated damages.

51.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

52.     Plaintiffs reallege and reaver Paragraphs 1 through 51 of this Class and Collective Action Complaint as if fully set forth herein.

53.     At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

54.     At all relevant times, Defendants had a time shaving policy of not compensating Plaintiffs and Class members for every hour they worked.

55.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

56.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them the minimum wage required by the New York Labor Law.

57.    Defendants knowingly and willfully violated rights of Plaintiffs and Class members by failing to pay "spread of hours" premium to them for each day they worked ten (10) or more hours.

58.    Defendants willfully violated rights of Plaintiffs and Class members by paying them on a salary basis, in violation of the New York Labor Law because they are non-exempt employees who must be paid on an hourly basis.

59.    Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

60.    Defendants failed to provide proper wage statements to all non-exempt employees per requirements of the New York Labor Law.

61.    Due to Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid overtime, unpaid minimum wage, illegally retained gratuities, unpaid spread of hours premium, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

d.   An award of unpaid minimum wages due under the FLSA and the New York Labor Law;

e.   An award of unpaid "spread of hours" premium due under the New York Labor Law;

f.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage pursuant to 29 U.S.C. § 216;

g.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wage and spread of hours premium pursuant to the New York Labor Law;

h.   An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.      Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

j.      Designation of this action as a class action pursuant to F.R.C.P. 23;

k.      Designation of Plaintiffs as Representatives of Class; and

l.      Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Dated: December 15, 2015

                                        Respectfully submitted,

                                        LEE LITIGATION GROUP, PLLC
                                        C.K. Lee (CL 4086)
                                        Anne Seelig (AS 3976)
                                        30 East 39th Street, Second Floor
                                        New York, NY 10016
                                        Tel.: 212-465-1188
                                        Fax: 212-465-1181
                                        *Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*


                                        By: /s/ C. K. Lee_____
                                            C.K. Lee